UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AICHEH, LLC, AXLE OF DEARBORN INC., and SAFA REAL ESTATE, LLC,

Plaintiffs,

v.

VERLAN FIRE INSURANCE COMPANY,

Defendant.

_________________________/

Case No. 2:25-cv-11015
Hon. Gershwin A. Drain

**ORDER AND OPINION GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [ECF No. 10] AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF No. 11]**

This matter concerns the denial of a business income claim from Plaintiffs Aicheh, LLC, Axle of Dearborn, Inc., and Safa Real Estate, LLC by their insurer, Defendant Verlan Fire Insurance Company. Following this denial, Plaintiffs initiated the appraisal process to settle the dispute, pursuant to Michigan's statutory appraisal procedure set forth in Mich. Comp. Law § 500.2833(1)(m). Defendant refused to participate in appraisal, arguing that Defendant's dispute with Plaintiffs is a coverage issue, which only a court may resolve. Plaintiffs brought the instant suit to compel

appraisal as mandated by the statute. The parties filed cross-motions for summary judgment seeking the determination of remaining coverage issues. Plaintiffs also request an order for Defendant's participation in appraisal proceedings once coverage issues are resolved.

Presently before the Court are the parties' cross-motions for summary judgment. The Court has determined that a hearing will not aid in the disposition of these motions and will determine the outcome on the briefs. E.D. Mich. L. R. 7.1(f)(2). The Court concludes that Plaintiffs' motion for partial summary judgment is **GRANTED** and Defendant's motion for summary judgment is **DENIED**.

## BACKGROUND

There are three Plaintiffs in this case. The first is Aicheh, LLC, who is based in Michigan. ECF No. 1, PageID.5. The second is Axle of Dearborn, Inc., ("Detroit Axle") a Michigan corporation that sells after-market auto parts. *Id.* at PageID.6. The third is Safa Real Estate, LLC, who is also based in Michigan. *Id.* Detroit Axle has a branch location in Ferndale, Michigan and one in Detroit. "Aicheh, LLC owns the real estate at Detroit Axle's operation in Ferndale, Michigan and Safa Real Estate, LLC owns the real property at Detroit Axle's operation on Warren Avenue in Detroit." ECF No. 10, PageID.68. The Defendant is Verlan Fire Insurance Company ("Verlan"), a New Hampshire company with its principal place of business in Massachusetts. ECF No. 3, PageID.20.

Storms erupted in both late June and July of 2021, leading to damage to Aicheh's Detroit location.[1] ECF No. 10, PageID.70. Specifically, Aicheh's "newly installed conveyor system, storage racks, and inventory were damaged by rainwater that leaked through the roof." *Id.* Aicheh was the named insured on policies with Verlan and with Lloyd's of London[2] ("Lloyd's") and reported their losses to each company. ECF No. 11, PageID.276.

Aicheh's policy with Verlan ("the Policy") begins with the section "Special Provisions," which provides the following:

> Inventory/stock is defined as raw materials, finished stock and work in progress.
>
> Inventory/stock is excluded under this policy.

ECF No. 10-2, PageID.95. Then, the "Covered Property" section of the Policy lists:

> C. All personal property owned by you and used in your business while at the location described in the Declarations of this policy or within 500 feet thereof;
>
> D. All personal property owned by others in your care, custody or control while at the location described in the Declarations of this policy or within 500 feet thereof.

ECF No. 10-2, PageID.106. Under the "Property Not Covered" the Policy states:

---

[1] The three Plaintiffs will be referred to jointly as "Aicheh," herein.

[2] Lloyd's of London is not a party to this action.

> H. Property which is covered in whole or in part by any other contract of insurance, except for the amount of loss which is in excess of the amount due, whether collectible or not, from such insurance (See the Other Insurance Condition in this form).

*Id.* at PageID.107. And the aforementioned "Other Insurance Condition" reads:

> D. Other Insurance
>
> This policy shall not provide coverage to the extent that any other insurance, of any type, directly or indirectly covers the same loss; we shall be liable for such loss or damage only to the extent that the amount of loss exceeds the coverage provided by other insurance, whether collectible or not.

*Id.* at PageID.114. The Policy also features terms concerning extra expense ("EE") coverage and business income ("BI") coverage. ECF No.3, PageID.21. The Policy's BI coverage specifically requires the suspension of business operations "due to direct physical loss or damage to Covered Property resulting from a Covered Cause of Loss." ECF No.10-2, PageID.123. The "Additional Exclusions" for "Business Income" and "Extra Expenses" coverage in this policy reads:

> Coverage under this Endorsement does not apply to any loss proximately caused by:
>
> 2. Direct physical loss or damage to finished stock, meaning stock you have manufactured, whether or not the stock has been packaged.
>
> . . . .
>
> 7. Any other indirect, consequential or remote loss or expenses.

*Id.* Aicheh reported losses to Verlan under the Business Personal Property and Business Income & Extra Expense categories of the Policy. ECF No. 10-4, PageID.181.

Although not a party to this action, it is worth noting that Aicheh's policy with Lloyd's is titled, "Stock Throughput Policy." ECF No. 11-14, PageID.474. The "Interest" listed in the policy with Lloyd's states:

> Goods and/or merchandise of every description incidental to the Insured's business, consisting principally of, but not limited to auto parts and/or all other interests including raw materials and semi-finished goods handled by the Insured in the course of their business or for which the Insured are responsible.

*Id.* at PageID.459.

In August of 2021, Aicheh initiated a substantial, labor-intensive relocation of its "undamaged product" from their Detroit location to their Ferndale location. ECF No. 14, PageID.510. Aicheh made this move in part to avoid losing its "stock-throughput coverage" with Lloyd's. *Id.* Predictably, this constricted business operations at the Detroit location to a substantial degree until February of 2022. *Id.*

After conducting their investigation of Aicheh's claimed losses, Verlan issued payments to Aicheh of $787,808.90 and $360,792.00 for losses under the personal property and EE categories of the Policy, respectively, totaling $1,148,600.90. ECF No. 11-12, PageID.378.

Aicheh later submitted a claim for BI/EE losses. Verlan rejected this claim via the following letter:

> The BI/EE loss asserted by Aicheh is primarily due to their decision to move facilities in order to maintain their stock policy with Lloyd's. It is clear from the documents provided and the EUO of Mike Musheinesh that the decision to move locations was made in response to Lloyd's demand that the stock be moved. Verlan doesn't owe for any BI/EE related to the stock.

ECF No. 11-12, PageID.379–380. While Verlan did pay EE losses earlier, they stated that they paid those because they "estimated the Extra Expense (EE) . . . would have been associated with labor to move items during a reasonable restoration period while the conveyor was repaired in place at the Detroit warehouse." ECF No. 11, PageID.278.

Viewing this as a dispute in the calculation of losses, Aicheh turned to Michigan's Insurance Code, and the Policy itself. The statute, Mich. Comp. Laws § 500.2833(1)(m), mandates that fire insurance policies issued or delivered in the state contain an appraisal provision:

> (m) That if the insured and insurer fail to agree on the actual cash value or amount of the loss, either party may make a written demand that the amount of the loss or the actual cash value be set by appraisal. If either makes a written demand for appraisal, each party shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days after receipt of the written demand. The 2 appraisers shall then select a competent, impartial umpire. If the 2 appraisers are unable to agree upon an umpire within 15 days, the

> insured or insurer may ask a judge of the circuit court for the county in which the loss occurred or in which the property is located to select an umpire. The appraisers shall then set the amount of the loss and actual cash value as to each item. If the appraisers submit a written report of an agreement to the insurer, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any 2 of these 3 shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by the insured and the insurer.

*Id.* Aicheh requested appraisal per the statute and Policy and Verlan declined. ECF No. 10-7, PageID.196, ECF No. 10–8, PageID.200. Verlan argued that appraisal was not appropriate because the dispute between the parties was about coverage, which only a court may resolve. *Id.*

Aicheh filed a Complaint on April 9, 2025, requesting that the Court order Verlan to participate in the appraisal process for Aicheh's claims under MCL § 500.2833(1)(m) and the Policy, to determine the amounts for their alleged losses under business personal property and BI/EE categories of the Policy. Aicheh also requests applicable interest under MCL § 500.2006 and other taxable costs. ECF No. 10, PageID.90. Verlan submitted their Answer on May 9, 2025. ECF No. 3, PageID.18.

The parties filed Motions for Summary Judgment, Responses, and Replies. *See* ECF No. 17, PageID.579, *see also* ECF No. 16, PageID.565. Aicheh requests

that the Court resolve whether Axle of Dearborn, Inc.'s inventory ("the Inventory") is Covered Property under the Policy and order appraisal with instructions to estimate the damage to "Covered Property caused by the June and July 2021 roof leaks and the BI and EE incurred as a result of that damage." ECF No. 17, PageID.588.

Verlan requests that the Court dismiss the Complaint because the dispute is about coverage and is therefore a question of law that appraisal cannot decide. Verlan argues that Aicheh's BI losses are not covered because the Inventory is not Covered Property based on exclusions in the Policy's "Special Provisions" and "Other Insurance" clauses, and because Aicheh's BI losses were not caused by a Covered Cause of Loss. *See* ECF No. 16, PageID.565–570.

## ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if its resolution will affect the outcome of the lawsuit." *Martingale LLC v. City of Louisville*, 361 F.3d 297, 301 (6th Cir. 2004) (citation omitted). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (citation omitted). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Id.*

B. Declaratory Relief

Aicheh requested declaratory judgment from the Court to determine certain coverage in its Policy with Verlan. ECF No. 1, PageID.5, ECF No. 17, PageID.588. "Where the parties cannot agree on coverage, a court is to determine coverage in a declaratory action before an appraisal of the damage to the [insured's] property." *Auto-Owners Ins. Co. v. Kwaiser*, 476 N.W.2d 467, 469–70 (Mich. Ct. App. 1991).

The parties here disagree on whether the Inventory is Covered Property under the Policy. ECF No. 17, PageID.588, ECF No. 16, PageID.570. The parties also disagree on Verlan's estimate of Aicheh's BI/EE losses, based on Verlan's denial of Aicheh's BI claim. ECF No. 17, PageID.588. The first disagreement expressly concerns certain terms in the Policy, which makes it a coverage issue and therefore a legal question that the Court must resolve before appraisal. *See Kwaiser,* 476

N.W.2d at 469–70. The second disagreement is a factual one, for which appraisal is the proper remedy, as the Court will explain later.

The Court will resolve the pending legal question of coverage first, then explain why the remaining issues are factual, and order appraisal pursuant to the determination of coverage.

C. Interpreting the Policy

Like any contract, an insurance policy is an agreement, with legal force, between parties. *See Sherman-Nadiv v. Farm Bureau Gen. Ins. Co.,* No. 279302, 2008 LEXIS 2592, at *78 (Mich. Ct. App. Nov. 20, 2008). These policies are interpreted using the same rules that courts apply to contracts, generally. *See id.* We view the policy as a whole, leave no term without meaning, and choose the plain meaning of the language. *Id.* If ambiguities are found–that is, terms that have more than one reasonable meaning–those ambiguities are resolved in favor of the insured, in favor of coverage. *Henderson v. State Farm Fire & Cas. Co.*, No. 110822, 1999 Mich. LEXIS 1870, at *354 (Mich. July 8, 1999).

*i. The Coverage Dispute*

The parties dispute whether the Inventory is Covered Property under the terms of the Policy, and thus whether it is excluded. If the Inventory is Covered Property, that impacts the BI/EE coverage because the BI/EE provision in the Policy requires

direct physical damage to "Covered Property." ECF No. 10–2, PageID.123. The BI/EE conditions for coverage read:

> This coverage applies only if your "business operations" are necessarily suspended due to direct physical loss or damage to Covered Property resulting from a Covered Cause of Loss under the Comprehensive Property Damage Policy.

*Id.* at PageID.123. Thus, the Inventory cannot be Covered Property if it fits into an exclusion in the Policy. The first general exclusion is set forth in "Special Provisions," which states:

> Inventory/stock is defined as raw materials, finished stock and work in progress.
>
> Inventory/stock is excluded under this policy.

*Id.* at PageID.94–95. The Policy goes on to define "finished stock" in the BI/EE section:

> Coverage under this Endorsement does not apply to any loss proximately caused by:
>
> . . . .
>
> 2. Direct physical loss or damage to finished stock, meaning stock you have manufactured, whether or not the stock has been packaged;

*Id.* at PageID.123.

In sum, the Inventory is excluded from coverage and cannot factor into the BI/EE conditions for coverage if the Inventory can be defined as raw materials, finished stock (defined as stock that Aicheh manufactured), or work in progress, or if the Inventory fits into a different general exclusion in the Policy.

*i. Aicheh's Interpretation of "Finished Stock"*

Aicheh argues that the Inventory is not "finished stock" because they did not and do not "manufacture" the Inventory. As they describe, the Inventory is made up of aftermarket auto parts they purchase elsewhere to then later sell online. ECF No. 14, PageID.510–511, ECF No. 11–2, Page.ID.298. Aicheh is a "national internet company, retailing after-market auto parts . . . as well as generating over the counter warehouse sales in Ferndale, Michigan." ECF No. 11–2, PageID.298. Therefore, their argument goes, the Inventory cannot be excluded from the BI/EE conditions as "finished stock."

Although not couched this way exactly, Aicheh argues for a plain meaning interpretation of "manufacture." Both parties cite the Merriam–Webster Online Dictionary, which contains the following definitions:

> **1** : something made from raw materials by hand or by machinery … imports most *manufactures* used by consumers . . . .
>
> **2 a** : the process of making wares by hand or by machinery especially when carried on systematically with division of labor the *manufacture* of automobiles

**b** : a productive industry using mechanical power and machinery

**3** : the act or process of producing something

ECF No. 14, PageID.511. Aicheh asks the Court to adopt the first definition, which does not exclude the Inventory because Aicheh does not use raw materials–by hand or machinery–to make anything. They buy the Inventory and sell it online.

*ii. Verlan's Interpretation*

Verlan argues that the third definition from the Merriam-Webster Online Dictionary–"the act or process of producing something"–is the correct one. ECF No. 15, PageID.561. They also cite a different dictionary definition of manufacture to support their interpretation: "the process of producing goods." *Id.* at PageID.562. Verlan further provides that "finished stock" is a "common industry term referring to any completed product ready for sale, shipment or distribution." *Id.* However, Verlan cites no authorities for this latter assertion and does not specify the industry where this term is common. And to be sure, Aicheh is in the retail industry, not the manufacturing industry. A term in the retail industry could well mean something different in the manufacturing industry, or even the insurance industry. Verlan's argument for a common industry definition is difficult to square without supporting authority, specificity as to the industry, and establishing "manufacture" as a term of art *in* that industry. *See Bridgeport Music, Inc. Dimension Films*, 410 F.3d 792, 798

(6th Cir. 2005) (requiring that the court adopt a commonly accepted definition of "digital sampling" because it is a term of art in the music industry).

Verlan's interpretation of "manufacture" is a broad one, meant to capture the kind of stock that a non-manufacturing company might hold, such as products "ready for sale, shipment or distribution." But to adopt Verlan's interpretation would be to ignore the common meaning of "manufacture."

*iii. The Court's Interpretation*

After considering the interpretations of "manufacture" offered by the parties and looking at the language of the Policy, the Court finds that there is no ambiguity in the Policy's language defining "finished stock" as "stock you have manufactured," and "inventory/stock" as "raw materials, finished stock and work in progress."

Opposing parties will often desire different definitions that meet their interests, but that does not create ambiguity where none exists otherwise. *Henderson*, 460 Mich. at 363 ("It is not a matter of ambiguity being asserted on the sole basis that each party offers a different definition for the purpose of supporting his desired outcome."). Ambiguities based on alternate dictionary meanings do not create ambiguity, either. *Id.* at 354. The ambiguity must be by virtue of more than one plausible construction. *Id.* at 363.

Here, there is only one plausible construction: Aicheh's. A self-described retailer that sources their inventory from an "overseas manufacturer" in order to sell it on Amazon and Ebay does not manufacture their stock, not by the plain meaning of "manufacture." ECF No. 11–2, PageID.298. The plain meaning of manufacture is defined as "the making of goods or wares by manual labor or machinery." *Random House Webster's Unabridged Dictionary* (2d ed, 1997). If Aicheh is a retailer that does happen to manufacture its stock according to the plain meaning of "manufacture," the Inventory *would* fit into the Policy's definition of "finished stock." The record, as cited above, indicates that they are not; the record indicates that they are a retailer who does not manufacture their stock.

Courts may give policy-defined terms the meanings provided in that policy so long as the meanings are clear and unambiguous. *Farm Bureau Mut. Ins. Co. of Michigan v. Nikkel,* 596 N.W.2d 915, 920 (Mich. 1999). Verlan supplied a definition of "finished stock" that clearly and unambiguously contemplates manufacturing by the insured. To trigger BI/EE, the conditions require "direct physical loss or damage to . . . stock *you* have manufactured." ECF No. 10–2, PageID.123 (emphasis added). The second-person "you" speaks to the policyholder, and it requires Aicheh to manufacture its stock. Therefore, the Inventory–stock that Aicheh has *not* manufactured–cannot be excluded under this provision.

Looking at the policy as a whole, including the language surrounding the terms in dispute, the Court still finds no ambiguity. The Michigan Supreme Court has confirmed that we may interpret a contract with the same tools and principles used to interpret a statute. *Klapp v. United Ins. Group Agency, Inc.,* 663 N.W.2d 447, 454 (Mich. 2003). And looking at the "Special Provisions" that define "inventory/stock" as "raw materials, finished stock and work in progress," the interpretive canon of *noscitur a sociis* is applicable. ECF No. 10–2, PageID.95. *Noscitur a sociis*–"known by the company it keeps"–is a canon of construction where a word is given meaning by its context, by the words surrounding it. *Thiel v. Goyings*, No. 156708, 2019 WL 3331810, at *501 (Mich. July, 24, 2019); *G.C. Timmis & Co. v. Guardian Alarm Co.*, No. 120035, 2003 Mich. LEXIS 1225, *421 (Mich. June 18, 2003). The words surrounding "inventory/finished stock" concern stages of manufacturing; the beginning features raw materials, the middle stage is the work in progress, and the final stage is the finished stock, which also references manufacturing in the Policy's later definition. ECF No. 10–2, PageID.123. If tasked with describing a retailer, it would strain credulity if a layman included "manufacture" in his description.

Alternate definitions of "finished stock" or "inventory/stock" were available to Verlan. Elsewhere in the Policy, it recites language such as "stock in trade" in the section, "Information Systems Coverage." *Id.* at PageID.128. The more plausible

argument is that the Inventory is Aicheh's "stock in trade," because that term allows for a definition of stock relative to the policyholder's trade, be it manufacturing or retail. But "stock in trade" is *not* listed in the BI/EE section of the Policy, nor in the "Special Provision" section. And the inclusion of "stock in trade" elsewhere in the Policy but outside the terms in this dispute indicates that it could have just as well been included in the provisions at issue, here.

Based on our interpretation of "finished stock" and "inventory/stock," per the Policy's definition and the plain meaning of the words, the Court concludes that the Inventory is not "finished stock" or "Inventory/stock" as defined in the Policy. However, that does not settle the coverage issue of whether the Inventory is Covered Property under the Policy.

*iv. "Other Insurance" Provision in the Policy*

Verlan argues that the Inventory is not Covered Property because the Inventory is covered by a different insurer: Lloyd's. Under "Property Not Covered," the Policy states:

> H. Property which is covered in whole or in part by any other contract of insurance, except for the amount of loss which is in excess of the amount due, whether collectible or not, from such insurance (See the Other Insurance Condition in this form);

ECF No. 10–2, PageID.107. Under the "Other Insurance Condition" it directs us to, the Policy states:

> D. Other Insurance
>
> This policy shall not provide coverage to the extent that any other insurance, of any type, directly or indirectly covers the same loss; we shall be liable for such loss or damage only to the extent that the amount of loss exceeds the coverage provided by other insurance, whether collectible or not.

*Id.* at PageID.114. The arguments and the record clearly establish that Lloyd's covers the Inventory. For one, Aicheh has admitted:

> Detroit Axle received an email on August 27, 2021 from a representative of Lloyd's of London requesting confirmation that all undamaged product was being removed from the Detroit Warehouse. (ECF No. 11–6). Detroit Axle understood that if it did not remove its undamaged product from its Detroit warehouse, it risked losing its stock-throughput coverage with Lloyd's.

ECF No. 14, PageID.509–10. The deposition of Detroit Axle's CEO, Michael Musheinesh, also establishes Lloyd's coverage of the Inventory:

> Q Okay. Are you aware of Lloyd's insuring the stock for the company?
>
> A I'm aware.

And on Aicheh's policy with Lloyd's, there lay the following provision:

> **Interest:** Goods and/or merchandise of every description incidental to the Insured's business, consisting principally of, but

> not limited to auto parts and/or all other interests including raw materials and semi-finished goods handled by the Insured in the course of their business or for which the Insured are responsible.

ECF No. 11–14, PageID.459. The Inventory fits into this provision's broad description of coverage from Lloyd's. With no uncertainty, the Inventory can be defined as "goods and/or merchandise of every description… not limited to auto parts and/or all other interests." *Id.*

The presence of this coverage satisfies the condition that triggers the enforceable "Other Insurance" provision in the Policy at bar. The Inventory is not Covered Property under the Policy; not until the provision's remaining conditions–such as exhaustion of coverage limits–are triggered.

At bottom, the Court must best effectuate the intent of the parties when they bargained for the contract. *Henderson*, 460 Mich. at 364. The Court cannot pervert the definition of "manufacture" at the expense of that word's plain meaning. Yet and still, the "Other Insurance" provision, viewed in light of the record, obligates the Court to find that Verlan did not bargain for a policy with Aicheh that covers the Inventory. That was not the intent of the parties.

D. <u>Appraisal</u>

The Michigan Legislature enacted a statute mandating policyholders and insurers to participate in appraisal as a tool to resolve their disputes about the scope

and estimates of losses in a claim. *See Cantina Enterprises II Inc. v. Property-Owners Ins. Co.*, 28 N.W.3d 800, 806 (Mich. Ct. App. 2024). To trigger mandatory appraisal, the dispute must concern a factual question, not a legal one. *Id.* at 809. When a dispute involves a question of coverage and *not* a question of fact, appraisal is improper. *Kwaiser,* 476 N.W.2d at 487. Rather, the Court must interpret the policy and determine coverage. *Id.*

A factual dispute, for example, is "whether particular damage was caused by a covered event or some other cause, the extent of damage, or the cost to repair that damage . . . ." *Seneca Special Ins. Co. v. ID Ventures, LLC*, No. 22-cv-11599, 2023 U.S Dist. LEXIS 49579, at *10 (E.D. Mich. Mar. 23, 2023). On the other hand a coverage issue, for example, is when an insurer and insured disagree about the meaning of the policy's text; there, appraisal is not the remedy. *See Laframboise v. State Farm Fire and Casualty Co.,* 588 F.Supp.3d 763, 766 (E.D. Mich. 2022). And when an insurer constructively admits to liability, the dispute becomes a factual one, regardless of whether the insurer expressly states otherwise. *See Cantina*, 28 N.W.3d at 809.

In sum, the threshold question courts must ask to enforce statutory appraisal under MCL§ 500.2833(1)(m) is whether there is a legal dispute about what the insurance policy covers, or a factual dispute about calculation of costs.

*i. The Nature of the Dispute*

From the start and throughout, Verlan has made this a dispute about causation. This lawsuit was triggered by a denial of Aicheh's BI claim because "[i]t is clear from the documents provided . . . that the decision to move locations was made in response to Lloyd's demand that the stock be moved. Verlan doesn't owe for any BI/EE related to the stock." ECF No. 11-12, PageID.379–380. Verlan's unilateral conclusion about the cause of Aicheh's claimed BI losses is based on their own factual findings.[3] *See id.* The wisdom of the appraisal statute is that it serves to reconcile these kinds of competing factual conclusions. *See Detroit Club Mgmt. Corp. v. Cincinnati Cas. Co.*, No. 22-13057, 2024 U.S. Dist. LEXIS 52618, at *11 (E.D. Mich. Mar. 25, 2024).

Verlan's forensic accountant Tamara L. Weber testified in her deposition that this purported issue of coverage turned on a *causal* conclusion:

> Q. Before we get into this, would you agree with me, that if the business income loss was caused by or primarily caused by the direct physical loss to the conveyer and rack system, that that would be a covered business income loss?
>
> **A. For the cause of loss that we're talking about today?**
>
> Q. I think we're talking about the same thing.

[3] This denial based on Aicheh's move from Detroit to Ferndale is especially curious because Aicheh has reported BI losses from the time *before* the move. ECF No. 10–10, PageID.238. All the more reason for a factual determination.

**A. Okay. For the roof leak?**

Q. Yes.

**A. Yes.**

ECF No. 10-10, PageID.238. It is important that Verlan has consistently justified the coverage denial based on causation linked to property not covered and a cause of loss not covered. Given the Court's determination of the outstanding dispute of coverage–that the Inventory is not Covered Property–all that remains is a determination of what caused Aicheh's alleged BI losses. And "courts in the Sixth Circuit have repeatedly held that appraisers make the factual determination of whether an insured's asserted loss is attributable to a covered or non-covered event." *Detroit Club*, 2024 U.S. Dist. LEXIS 52618, at *4.

In *Proto Gage, Inc. v. Fed. Ins. Co., Inc.,* No. 21-12286, 2023 WL 6396660, at *2 (E.D. Mich. Sept. 29, 2023), the insurer argued that a covered event did not produce the business income loss, which is why the insurer denied liability and asserted that the dispute was about coverage. This court has rejected that reasoning by the insurer in *Proto Gage* and in other cases. *See Haddock v. State Farm Fire & Cas. Co.*, 638 F. Supp. 3d 748, 754 (E.D. Mich. Nov. 2022) ("[A]ppraisers must resolve the disputes concerning whether certain damage was caused by [insured's] burst pipe."); *see also Basim Shina v. State Farm Fire & Cas. Co.*, No. 2:20-CV-10080-TGB-RSW, 2022 U.S. Dist. LEXIS 61230, at *14 (E.D. Mich. Mar. 31, 2022)

("Michigan law compels the conclusion that appraisers may permissibly make such a determination of causation."). Now recall Verlan's argument:

> If Aicheh incurred a business income loss, it was not the result to damage to Covered Property or the result of a Covered Cause of Loss; it resulted from Aicheh's decision to move their operations from their Detroit warehouse to their Ferndale location and/or to a lesser extent from damage to its parts inventory/stock, which is not Covered Property under the Policy.

ECF No. 11, PageID.273. Fundamentally, this dispute boils down to causation and courts have consistently held that causation is a question for appraisers, not the courts. *See Smith v. State Farm Fire and Cas. Co.*, 737 F. Supp. 2d 702 (E.D. Mich. 2010).

There is no genuine issue of material fact that leaves coverage in doubt. The Policy mandates the same triggering conditions for losses for EE, and for BI. ECF No. 10–2, PageID.123. And Verlan has already made payments to Aicheh for EE. "The undisputed EE amount was calculated at $360,792.00 and paid." ECF No. 11–12, PageID.378. No coverage issue for EE, apparently. But Verlan then states, "[t]he BI/EE loss asserted by Aicheh is primarily due to their decision to move facilities." *Id.* at PageID.379. Yet, the Policy does not bifurcate the triggering conditions required for BI and EE–they are one and the same. It is reasonable to claim that the same conditions that triggered Verlan to pay for EE losses under the Policy also led to business income loss; logic quite nearly demands this possibility.

Or take Verlan's own words and findings. From Verlan's adjuster, Steve Waskin: "[i]t is our opinion that the insured should have no BI claim *or if so, very limited as a result of the covered damages* to the conveyor system and racks." ECF No.10–3, PageID.168 (emphasis added). Admitting that Aicheh could have a "very limited" BI claim is admitting that Aicheh *has a BI claim*; it is admitting that there is no coverage issue.

Verlan is making the same awkward argument that insurers have made to this Court and Michigan's for years–Verlan is acknowledging and disputing coverage. *See Cantina*, 28 N.W.3d at 806. *Detroit Club*'s statements on this approach are instructive and deserve repeating:

> [Insurer's] bobbing and weaving on coverage determination demonstrates not only that it is in good company with other insurers that have been ordered into appraisals; it shows the perniciousness of assigning dispositive treatment to an insurer's pronouncement that it is denying coverage. It would undermine Michigan's legislative scheme to make the availability of the appraisal process turn on whether the insurer had announced a decision to contest coverage . . . If the contest between an insured and insurer is a factual one—such as a dispute over the scope of damages or causation—it must be resolved by the process selected by the legislature, regardless of whether an insurer intones that it is denying coverage.

*Detroit Club,* 2024 WL 1258628, at *4.

An insurer's conduct may admit to coverage, even if their words do not. *Maksym v. Auto-Owners Ins. Co.*, No. 372827, 2026 WL 513521, at *4 (Mich. Ct.

App. Feb. 24, 2026) ("This Court reasoned that the defendant's behavior demonstrated that it had conceded . . . coverage applied to the plaintiff's claim."). Recall that if an insurer admits to coverage, "a court is statutorily mandated to order the parties to participate in Michigan's statutory appraisal process." *Cantina,* 28 N.W.3d at 806.

Verlan has acknowledged[4] that BI is a category of loss that they cover. *See* ECF No. 15, PageID.540. Verlan has acknowledged that Aicheh may have a covered BI loss that resulted from damage to property whose coverage was never in dispute. *See* ECF No. 10-3, PageID.168. And Verlan has acknowledged that Aicheh could have a covered BI loss that was caused by the roof leak, a covered event. ECF No. 10-10, PageID.238. Given that the Court has settled the final question of coverage regarding the Inventory, and the remaining dispute is about causation and scope of loss, the sole controversy left is a factual one for appraisal.

## **Conclusion**

No genuine issue of material fact remains about whether the Inventory is Covered Property: it is not. No genuine issue of material fact remains about the

[4] In late 2023, Verlan prepared an analysis of Aicheh's BI loss, an analysis that estimated a BI loss at roughly $1,000,000. Whether or not preparing that is a normal course of business, it would cut in favor of Verlan admitting liability for BI coverage. ECF No. 10-9, PageID.205.

character of the dispute, whether it is legal or factual: it is factual. The issue is ripe for appraisal.

Accordingly, the Court **GRANTS** Plaintiff's Motion for Partial Summary Judgment [ECF No. 10] and **DENIES** Defendant's Motion for Summary Judgment [ECF No. 11].

1. Further, it is **ORDERED** that Defendant participate in the appraisal process set forth by Mich. Comp. Laws. § 500.2833(1)(m) **on or before November 4, 2026,** under the guidelines of coverage provided in this Opinion and Order. The appraisers shall not include any BI or EE award that recognizes the Inventory as Covered Property, or that did not result from the June and July 2021 rook leaks.
2. Further, it is **ORDERED** that the parties notify this Court within 7 days of completion of appraisal and file the related paperwork on the docket.
3. Further, it is **ORDERED** that this matter is **STAYED** and **ADMINISTRATIVELY CLOSED** pending determination of the appraisal proceeding described above. After the appraisal renders a decision in this matter, the case may be reopened upon petition of

either party. The Court retains jurisdiction to consider motions to vacate, set aside, or enforce any appraisal award.

**IT IS SO ORDERED.**

**DATE**: October 13, 2026

/s/ Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge